## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

MELISSA A CRESSMAN,

        Plaintiff,

v.                                                    Case No:   6:20-cv-01963-LHP

COMMISSIONER OF SOCIAL
SECURITY

        Defendant.

_____

## MEMORANDUM OF DECISION[1]

Melissa A. Cressman ("Claimant") appeals the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits.   Doc. No. 1.   Claimant raises one argument challenging the Commissioner's final decision, and, based on that argument, requests that the matter be reversed and remanded for further administrative proceedings.   Doc. No. 26, at 21–29, 48.   The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and that the final decision of the Commissioner should be affirmed.   *Id.*

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.   *See* Doc. Nos. 19, 21, 24.

at 48. For the reasons stated herein, the Commissioner's final decision is **AFFIRMED**.

## I.   PROCEDURAL HISTORY.

On December 30, 2017,[2] Claimant filed an application for disability insurance benefits, alleging a disability onset date of June 1, 2016. R. 19, 188. Claimant later amended the disability onset date to March 8, 2016. R. 19, 42, 186. Claimant's application was denied initially and again upon reconsideration, and she requested a hearing before an ALJ. R. 113, 118, 125, 141. A hearing was held before the ALJ on September 25, 2019. R. 19, 39–80, 144.[3] Claimant and a vocational expert ("VE") testified at the hearing. *Id.*

After the hearing, the ALJ issued an unfavorable decision finding that Claimant was not disabled. R. 19–32. Claimant sought review of the ALJ's decision by the Appeals Council. R. 8, 185. On September 15, 2020, the Appeals

---

[2] The "Application Summary for Disability Insurance Benefits" states that Claimant applied for benefits on January 3, 2018, but according to the ALJ's decision, Claimant filed the application on December 30, 2017. *Compare* R. 19, *with* R. 188. For consistency, and because the application date is not dispositive of this appeal (as under either date the same set of regulations applies), the Court utilizes the application date stated by the ALJ: December 30, 2017.

[3] According to the ALJ's decision, Claimant was represented at the hearing by Jared Dickerson, a non-attorney representative, and Joshua Syme, a non-attorney representative. R. 19. The hearing transcript references only Mr. Dickerson as the attorney present, although it appears that Mr. Dickerson was a non-attorney representative. *See* R. 39, 41, 184. The hearing transcript does not reflect Mr. Syme's attendance, but from the record it appears that My Syme is an attorney. *See* R. 116.

Council denied the request for review.   R. 1–7.   Claimant now seeks review of the

final decision of the Commissioner by this Court.   Doc. No. 1.

## II.   THE ALJ'S DECISION.[4]

After careful consideration of the entire record, the ALJ performed the five-

step evaluation process as set forth in 20 C.F.R. § 404.1520(a).   R. 19–32.[5]   The ALJ

first found that Claimant met the insured status requirements of the Social Security

Act through September 30, 2021.   R. 21.   The ALJ also concluded that Claimant

had not engaged in substantial gainful activity since March 8, 2016, the amended

alleged onset date.   *Id.*   The ALJ found that Claimant suffered from the following

severe impairments:   degenerative disc disease of the lumbar and cervical spine,

---

[4] Upon a review of the record, counsel for the parties have adequately stated the pertinent facts of record in the Joint Memorandum.   Doc. No. 26.   Accordingly, the Court adopts those facts included in the body of the Joint Memorandum by reference without restating them in entirety herein.

[5] An individual claiming Social Security disability benefits must prove that he or she is disabled.   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled:   (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ('RFC') assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience."   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(i)–(v), 416.920(a)(i)–(v)).

fibromyalgia, diabetes, headaches, sinusitis, depression, and anxiety disorder.   *Id.*
But the ALJ concluded that Claimant did not have an impairment or combination
of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404,
Subpart P, Appendix 1.   R. 21–24.

Based on a review of the record, the ALJ found that Claimant had the residual
functional capacity ("RFC") to perform sedentary work as defined in the Social
Security regulations,[6] in addition to work that is simple or routine, meaning an SVP
of 1 or 2,[7] with the following additional limitations:

> The claimant can occasionally stoop, kneel, crouch, or crawl.   She can
> never climb ladders, ropes, or scaffolds, but she may occasionally climb
> ramps and stairs.   Additionally, the claimant should avoid exposure

---

[6] The social security regulations define sedentary work to include:

> Lifting no more than 10 pounds at a time and occasionally lifting or carrying
> articles like docket files, ledgers, and small tools.   Although a sedentary job
> is defined as one which involves sitting, a certain amount of walking and
> standing is often necessary in carrying out job duties.   Jobs are sedentary if
> walking and standing are required occasionally and other sedentary criteria
> are met.

20 CFR 404.1567(a).

[7] "The DOT numbers refer to the Dictionary of Occupational Titles and its detailed
explanations concerning each occupation's requirements.   These descriptions include
exertion and skill levels.   Exertion refers to the work, in a purely physical sense, that the
job requires, and it is divided into five categories: sedentary, light, medium, heavy and
very heavy.   Skill refers to how long it takes to learn the job, and it is divided into three
categories: unskilled, semiskilled and skilled, with the 'SVP' (Specific Vocational
Preparation) providing further subdivision of the three skill categories into nine levels:
SVP 1 and 2 are unskilled, SVP 3 and 4 are semiskilled, and SVP 5 through 9 are skilled."
*Jones v. Comm'r of Soc. Sec.*, No. 8:19-cv-1415-T-NPM, 2020 WL 8669680, at *3 n.4 (M.D. Fla.
Nov. 30, 2020).

to hazards, such as heights or machinery with moving parts.   She should also avoid concentrated exposure to dusts, fumes, gases, odors, and poorly ventilated areas.   She can frequently reach (including overhead), handle, and finger with the upper extremities.   She cannot perform production rate pace work. She can tolerate only occasional changes in routine work place settings.   She should not perform outside jobs.   Finally, the claimant is likely to be absent from work on an unscheduled basis (including the probationary period) one day per month.

R. 24.

After considering the record evidence, Claimant's RFC, and the testimony of the VE, the ALJ found that Claimant was unable to perform any past relevant work, which included work as a senior beauty advisor, receptionist, and medical records clerk.   R. 29–30.   However, considering Claimant's age (younger individual), education, work experience, and RFC, as well as the testimony of the VE, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Claimant could perform, representative occupations to include addresser, document preparer, and touch up screener.   R. 30–31.   The ALJ accepted the VE's testimony that the number of available jobs would be eroded by 50% due to unpredictable absenteeism, and reflected that finding in the numbers of positions stated to be available in the decision.   R. 31.   Based on the foregoing, the ALJ concluded that Claimant was not under a disability from her alleged disability onset date through the date of the decision.   R. 31–32.

## III.    STANDARD OF REVIEW.

Because Claimant has exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).   The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).   The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence.   *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

IV.    **ANALYSIS.**

In the Joint Memorandum, which the Court has reviewed, Claimant raises one assignment of error:    the ALJ erred in his consideration of the medical opinions of Dr. Jeffrey A. Downing, D.O. and Dr. Prudent Marcelin, M.D., Claimant's treating physicians.    Doc. No. 26, at 21–28.    Thus, this is the only issue that the Court will address.

A.    <u>Applicable Law</u>.

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work.    *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).    The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."    *Lewis*, 125 F.3d at 1440.    In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the opinions of medical and non-medical sources.    20 C.F.R. § 404.1545(a)(3).

Claimant filed her application for disability insurance benefits on December 30, 2017.    R. 19, 188.    Effective March 27, 2017, the Social Security Administration implemented new regulations related to the evaluation of medical opinions, which provide, in pertinent part, as follows:

(a) How we consider medical opinions and prior administrative medical findings.    We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your

medical sources.    When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.[8]    The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).    We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 404.1520c(a).    The regulations further state that because supportability and consistency are the most important factors under consideration, the Commissioner "will explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] determination or decision."    *Id.* § 404.1520c(b)(2).[9]

Pursuant to the new regulations, the Commissioner is not required to articulate how she "considered each medical opinion or prior administrative

---

[8] Subparagraph (c) provides that the factors to be considered include:    (1) supportability; (2) consistency; (3) relationship with the claimant (which includes consideration of the length of treatment relationship; frequency of examination; purpose of treatment relationship; extent of treatment relationship; and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding.    20 C.F.R. § 404.1520c(c).

[9] "Supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Welch v. Comm'r of Soc. Sec.*, No. 6:20-cv-1256-DCI, 2021 WL 5163228, at *2 (M.D. Fla. Nov. 5, 2021) (footnote omitted) (citing 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2)).

medical finding from one medical source individually." *Id.* § 404.1520c(b)(1).
"Courts have found that '[o]ther than articulating [her] consideration of the
supportability and consistency factors, the Commissioner is not required to discuss
or explain how [she] considered any other factor in determining persuasiveness.'"
*Bell v. Comm'r of Soc. Sec.*, No. 6:20-cv-1923-DCI, 2021 WL 5163222, at *2 (M.D. Fla.
Nov. 5, 2021) (quoting *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-
MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019)).   *See also Delaney v. Comm'r
of Soc. Sec.*, No. 6:20-cv-2398-DCI, 2022 WL 61178, at *2 (M.D. Fla. Jan. 6, 2022)
(noting that the ALJ may, but is not required to, explain how he or she considered
the remaining factors besides supportability and consistency).

      B.    <u>Dr. Jeffrey A. Downing, D.O</u>.

      Dr. Downing is Claimant's long-time osteopathic treating physician.   *See* R.
15, 845.   On August 23, 2019, Dr. Downing completed a Physical Residual
Functional Capacity Questionnaire on Claimant's behalf.   R. 845–49.   Based on
diagnoses including fibromyalgia and recurrent somatic dysfunction disorder, Dr.
Downing opined that Claimant's prognosis is poor, and that her symptoms include
impaired activities of daily living, positional transitioning restrictions, neck pain,
low blood pressure, gait instability, global joint stiffness, and upper extremity
decreased grip/pain.   R. 845.   Dr. Downing further opined that Claimant's
symptoms would constantly interfere with the attention and concentration needed

to perform even simple work tasks, and that Claimant was incapable of tolerating even low stress jobs due to her persistent chronic intractable pain.   R. 846.

Dr. Downing opined that Claimant would have the following functional limitations if placed in a competitive work situation:   Claimant could walk only 1/4 of a city block without rest or severe pain, sit only 10 minutes at a time, stand only 5 minutes at a time, and sit/stand/walk less than 2 hours in an 8-hour workday; Claimant requires periods of walking every 5 minutes in 2 minute intervals in an 8-hour workday, the ability to shift positions at will, and unscheduled breaks every 30 minutes in an 8-hour workday, resting for 30 minutes at a time; and Claimant must elevate her legs above her waist during prolonged sitting, which would be 100% of the time during sedentary work.   R. 846–47.   Dr. Downing further opined that Claimant could rarely lift less than 10 pounds and never lift 10 pounds or more; she could rarely look down or turn her head and occasionally look up or hold her head in a static position; she could never twist, stoop (bend) crouch/squat, climb ladders or stairs; and that Claimant had significant limitations with reaching, handling, or fingering.   R. 847–48.

In the decision, the ALJ discusses Dr. Downing's medical records at various points, *see* R. 25–26, but as to Dr. Downing's opinion regarding Claimant's functional limitations, states as follows:

> Dr. Downing['s] . . . opinion is not persuasive, because these extreme
> limitations and the brief explanation provided are not well supported

by Dr. Downing's treatment notes.  For example, although Dr. Downing referred to the claimant's impaired gait, difficulty changing positions, and decreased range of motion throughout her spine in support of these extreme restrictions, his examination notes rarely noted gait impairments or significant difficulty changing positions. Moreover, his records indicate the strong likelihood of a somatic disorder, noting that the claimant had consistently intact motor function, strength, and sensation.  Additionally, this opinion is not consistent with the claimant's own alleged symptoms or the record as a whole, which certainly indicates complaints for severe pain, part of which was considered somatic.  Moreover, the claimant admitted she can still maintain most activities of daily living and she appreciated good symptom relief with manipulative therapy and pain medications. Finally, although subjective range of motion deficits were consistently appreciated in examinations due to pain, she exhibited no significant sensory, motor, or mobility deficits outside of diffuse tender points. (Hearing Testimony, Exhibits 6F, 9F, 17F, 20F).  Finally, while the undersigned notes this opinion is certainly consistent with the others in the record, the striking similarities in both form and content between all three are somewhat suspect and appear to rely largely on the claimant's subjective reports and complaints rather than their own clinical observations.  (see also, Exhibits 21F, 23F).  Considering this, the undersigned finds this opinion is not persuasive.

R. 27–28.

Thus, the ALJ discounted Dr. Downing's opinion for the following reasons: (1) the opinion is unsupported by Dr. Downing's own treatment notes; (2) the opinion is inconsistent with the record as a whole, including Claimant's own alleged symptoms, her activities of daily living, her symptom relief with manipulative relief and pain medications, and the lack of certain deficits; and (3) while "certainly consistent" with other treating physician opinions in the record, the similarities in opinions from multiple medical professionals appeared

"somewhat suspect" to the ALJ, and said opinions appeared to rely on Claimant's subjective reports rather than clinical observations.   *Id.*

In the joint memorandum, Claimant attacks each of these reasons, arguing that the ALJ erred in his consideration of Dr. Downing's opinions because:   (1) the ALJ failed to state with particularity how the objective medical evidence of record specifically contradicted Dr. Downing's opinions, and contrary to the ALJ's findings, the record does support Dr. Downing's opinions; (2) substantial evidence of record belies the ALJ's conclusions regarding Claimant's activities of daily living, including chronic pain complaints, only temporary pain relief from medication, her self-reports about activities related to hygiene, and her self-reported exertional limitations; and (3) without record evidence of such, the ALJ's unsubstantiated assertion that treating medical providers collaborated in preparing their opinions is an impermissible negative inference and a legally insufficient basis to discount a treating physician's opinions.   Doc. No. 26, at 23–27.

As discussed above, under the regulations applicable to Claimant's application for disability insurance benefits, the ALJ was only required to articulate how he considered the factors of supportability and consistency in discussing the persuasiveness of a medical opinion.   20 C.F.R. § 404.1520c.   And in this case, the ALJ has satisfied this standard because the ALJ discussed the supportability of Dr. Downing's opinions (*i.e.*, that Dr. Downing's opinions were unsupported by his

own treatment notes) as well as the consistency of those opinions with the record (*i.e.*, that the opinions were contradicted by Claimant's subjective complaints and the record as a whole).   *See, e.g.*, *Moberg v. Comm'r of Soc. Sec.*, No. 6:19-cv-891-Orl-LRH, 2020 WL 4936981, at *4 (M.D. Fla. Aug. 24, 2020) (the ALJ's consideration of medical opinions "comported with the requirements of the new Social Security Regulations because the ALJ articulated the evidence affecting the supportability and consistency of each medical opinion and determined whether such opinion was supported by the weight of the record evidence").   *See also Brown v. Comm'r of Soc. Sec.*, No. 2:20-cv-446-JES-MRM, 2021 WL 3476405, at *4 (M.D. Fla. June 29, 2021), *report and recommendation adopted*, 2021 WL 3163972 (M.D. Fla. July 27, 2021) (finding no error under the new regulations because the ALJ articulated persuasiveness of the medical opinion in light of the supportability and consistency factors and found it inconsistent with other opinions of record).

Claimant, in essence, argues that the ALJ's findings in the decision as to Dr. Downing's opinions are not supported by substantial evidence.   Doc. No. 26, at 23–27.   Upon consideration, the Court disagrees.

First, contrary to Claimant's assertions, the ALJ adequately set forth the basis for his conclusion that Dr. Downing's objective findings contradicted his opinions as to Claimant's functional limitations.   Specifically, the ALJ found Dr. Downing's opinion unsupported by Dr. Downing's own treatment notes, in that although Dr.

Downing referred to Claimant's impaired gait, difficulty changing positions, and decreased range of motion to support the opined limitations, Dr. Downing's treatment notes "rarely noted gait impairments or significant difficulty changing positions." R. 28. A review of Dr. Downing's records supports the ALJ's finding. *See* R. 302–318 (Exhibit 1F, office treatment records from October 27, 2004 through April 10, 2017). Claimant contends that contrary to the ALJ's findings, however, although Claimant denied gait issues and positional problems in earlier 2017 treatment, the ALJ erred because later records from Dr. Downing from 2017 to 2019 reflect positive flexion tests and painful posterior superior iliac spine ("PSIS") tests. Doc. No. 26, at 24–25 (citing (Exhibits 16F, 17F)). Then, Claimant argues that contrary to the ALJ's finding that Dr. Downing's records "indicate the strong likelihood of a somatic disorder," Dr. Downing's records demonstrate somatic *dysfunction*, rather than somatic *disorder*, and it is "not clear whether the ALJ understood Dr. Downing's osteopathic terminology correctly." *Id.* at 25–26.

Upon consideration, what Claimant really asks is for the Court to reweigh the evidence, which is not within the province of this Court. *See Bloodsworth*, 703 F.2d at 1239. And Claimant does not adequately articulate how Dr. Downing's treatment notes from 2017 to 2019 and the findings therein allegedly compel a different conclusion than reached by the ALJ, [10] nor how the ALJ's alleged

_____

[10] Notably, the ALJ considered the records cited by Claimant from Dr. Downing

misunderstanding of osteopathic terminology would undermine the ALJ's conclusions.   *See, e.g.*, *Allen-Bond v. Comm'r of Soc. Sec.*, No. 6:17-cv-846-Orl-DCI, 2018 WL 4360619, at *4 (M.D. Fla. Sept. 13, 2018) (finding, under older version of the regulations, "citation to evidence that Claimant believes is consistent" with a doctor's opinion was unpersuasive because "[t]he only issue is whether there is substantial evidence to support the ALJ's decision," and "[t]he Court will not reweigh the evidence").   *See also Phelps v. Kijakazi*, No. 8:20-cv-1572-CPT, 2021 WL 4473134, at *4 (M.D. Fla. Sept. 30, 2021) (noting, under newer version of regulations, it is not the Court's role to reweigh the evidence).   Given that the ALJ's supportability findings are supported by the record, the Court finds no reversible error.   *See generally Irwin v. Comm'r of Soc. Sec.*, No. 2:20-cv-230-MRM, 2021 WL 4077586, at *7 (M.D. Fla. Sept. 8, 2021) (citations omitted) ("[N]othing in the relevant regulations requires ALJs to apply an all-or-nothing approach when assessing a medical source's opinions.   Instead, the ALJ's RFC determination must merely be supported by substantial evidence.").

Moreover, the ALJ's analysis as to the consistency of Dr. Downing's opinion is also supported by the record.   Specifically, the ALJ found Dr. Downing's opinion inconsistent with Claimant's alleged symptoms, Claimant's ability to maintain most

---

from 2017 to 2019 in the RFC determination in this case.   *See* R. 26–29 (citing and discussing Exhibits 16F, 17F).

activities of daily living, Claimant's symptom relief with therapy and medication, and records demonstrating that Claimant exhibited no significant sensory, motor, or mobility deficits.   R. 27–28.   And the record supports those statements.   *See* R. 60, 64–65, 67, 72 (Claimant's hearing testimony that she can drive a car, does light housework, takes care of dogs, goes to a friend's house, but that she cannot wash her own hair, has "a little" trouble dressing, and that she cannot shave or put lotion on every day); R. 275–82 (adult function report stating that Claimant generally can complete personal care, she prepares simple meals daily, she does indoor household chores (although she needs help carrying the laundry), she takes care of her dog, completes physical therapy exercises at home, goes shopping, and she drives, leaving home approximately 3–4 times per week); R. 709-86 (Exhibit 17F, demonstrating immediate improvement reported after manipulative therapy); *id.* (Exhibit 17F, demonstrating no neurosensory loss); R. 826–39 (Exhibit 20F, demonstrating normal range of motion findings).   *See also* R. 327, 328, 346, 347, 350, 354, 356, 358, 360, 364, 625–708 (reported improvement after manipulative therapy).

In the joint memorandum, Claimant contends that the record evidence demonstrates to the contrary, specifically citing Claimant's subjective complaints about her activities of daily living and her level of pain relief reported to providers. *See* Doc. No. 26, at 26 & n. 19.   Claimant seems to suggest that the ALJ failed to be sufficiently specific as to which activities of daily living contradicted Dr. Downing's

opinion.  *Id.* at 27.   Again, however, Claimant's argument is an invitation for the Court to reweigh the evidence, which would be improper.  *See Bloodsworth*, 703 F.2d at 1239.   *See also Allen-Bond*, 2018 WL 4360619, at *4; *Phelps*, 2021 WL 4473134, at *4.   Because the ALJ's consistency findings are supported by substantial evidence, the Court finds no reversible error.

Finally, Claimant says that the ALJ erred in discounting Dr. Downing's opinion due to "striking similarities" between his opinion and those of other medical professionals, which Claimant contends provides an "impermissible negative inference."   Doc. No. 26, at 27.   Because the Court finds that the ALJ's decision was otherwise supported by substantial evidence, the Court likewise finds no reversible error in this regard.   *Cf. D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 948 (11th Cir. 2010) (finding no reversible error under older version of regulation in the ALJ's consideration of opinion of treating physician where "the ALJ articulated at least one specific reason for disregarding the opinion and the record support[ed] it.").[11]   And to the extent that Claimant's argument must be considered, the Court finds no reversible error on the facts of this case because it is unclear that the ALJ relied on the "striking similarities" in rejecting Dr. Downing's opinion, given that the ALJ also noted that the opinion was largely based on

---

[11] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See*   11th Cir. R. 36–2.

Claimant's subjective reports, which Claimant does not refute.   *See* R. 27–28; Doc. No. 26, at 27.   *Cf. Allen-Bond*, 2018 WL 4360619, at *5 (even assuming the ALJ erred in improperly considering the credibility of a doctor, finding any error harmless because the ALJ's decision for discounting the medical opinion was otherwise supported, and the claimant notably provided no authority to support the argument that it is improper for the ALJ to consider the credibility of the doctor in weighing the opinion).   *See also Kautzer v. Kijakazi*, No. 20-CV-511-WMC, 2021 WL 4191430, at *5 (W.D. Wis. Sept. 15, 2021) (finding no reversible error as to the ALJ's (correct) observation regarding a medical opinion because it was not clear whether it was a factor the ALJ weighed for or against the medical opinion).

In sum, what Claimant is really asking the Court to do is reweigh the evidence with regard to the ALJ's consideration of Dr. Downing's opinion, which is not within the province of this Court.   Because the ALJ's decision is supported by substantial evidence, the Court rejects Claimant's contentions as it relates to the ALJ's consideration of Dr. Downing's opinions.

C.   Dr. Prudent Marcelin, M.D.

Dr. Marcelin is Claimant's treating pain management specialist, who has been treating Claimant since at least 2017.   *See* R. 459–90, 554–606, 793–825.   On September 13, 2019, Dr. Marcelin completed a Physical Residual Functional Capacity Questionnaire, which provides opinions as to Claimant's physical

functional limitations similar to the opinions provided by Dr. Downing.   *Compare*

R. 845–50 (Dr. Downing's opinion), *with* R. 851–55 (Dr. Marcelin's opinion).

In the decision, the ALJ states as follows as it relates to Dr. Marcelin:

> In 2018 and 2019, the claimant received routine pain management therapy, in the form of medication management, from Prudent Marcelin, M.D.   While the claimant often complained of significant fatigue, pain, and limited mobility, Dr. Marcelin rarely noted physical abnormalities upon examination.   Often, she simply noted the claimant's complaints and refilled her medications.   At other times, she recorded full examinations with no abnormal findings, which is not consistent with the claimant's complaints.   (Exhibits 14F, 19F).

R. 26.   Then, the ALJ discusses Dr. Marcelin's findings in the Physical Residual

Functional Capacity Questionnaire as follows:

> Dr. Marcelin also submitted a statement that is nearly identical to the two statements submitted by Dr. Downing and Ms. Ledgerwood, which indicate she was of the opinion that the claimant is incapable of sitting, standing, and/or walking for even two hours in an eight-hour workday, and can generally only perform one of these activities for five to ten minutes at one time.   She also determined the claimant has constant interference with concentration and cannot perform even "low stress" work due to constant pain.   Dr. Marcelin similarly stated the claimant can never lift any amount of weight, should never perform postural activities, has only ten percent use of her hands for work, and will require a ten minute rest break for hour of work performed in an eight hour workday.   Finally, she indicated the claimant will likely be absent from work for more than four hours per day.   (Exhibit 23F). This opinion is not persuasive, because these extreme limitations are not supported by Dr. Marcelin's treatment notes, which indicated unremarkable findings or otherwise contained no examination notes at all.   Additionally, this opinion is not consistent with the claimant's own alleged symptoms or the record as a whole, which certainly indicates complaints for severe pain, part of which were considered somatic.   Moreover, the claimant admitted she can still maintain most activities of daily living, and she appreciated good symptom relief with

manipulative therapy and pain medications.   Finally, although subjective range of motion deficits were consistently appreciated in examinations due to pain, she exhibited no significant sensory, motor, or mobility deficits outside of diffuse tender points. (Hearing Testimony, Exhibits 6F, 9F, 17F, 20F).   Finally, while the undersigned notes this opinion is certainly consistent with the others in the record, the striking similarities in both form and content between all three are somewhat suspect and appear to rely largely on the claimant's subjective reports and complaints rather than their own clinical observations.   (see also, Exhibits 21F, 22F).   Considering this, the undersigned finds this opinion is not persuasive.

R. 28–29.

Thus, the ALJ discounted Dr. Marcelin's opinion as: (1) unsupported by Dr. Marcelin's treatment notes, which contained either unremarkable findings or no findings at all; (2) inconsistent with Claimant's subjective complaints and activities of daily living and other examination findings; and (3) containing "striking similarities" to other opinions of record and largely based on Claimant's subjective reports.   *Id.*

As with the ALJ's consideration of Dr. Downing, here, Claimant argues that Dr. Marcelin's treatment notes contain objective examination findings supporting the opined limitations.   Doc. No. 26, at 28.   Claimant also contends that the ALJ failed to state with particularity what activities of daily living Claimant admitted to being able to perform that contradicted Dr. Marcelin's opinions.   *Id.* at 29.   And Claimant asserts that the ALJ's finding that "subjective [ROM] deficits were

consistently appreciated" but that no significant sensory, motor, or mobility deficits were noted, is not supported by substantial evidence.   *Id.*

Upon consideration, the Court again finds that the ALJ complied with the applicable regulations in addressing Dr. Marcelin's opinions, and Claimant has failed to establish reversible error.   The ALJ found Dr. Marcelin's opinions unsupported by her own treatment notes, which the ALJ stated contained unremarkable findings or otherwise contained no examination notes at all. Claimant does not directly address this finding, and a review of Dr. Marcelin's records cited by the ALJ supports the ALJ's statement.   *See* R. 554–606 (Exhibit 14F); R. 793–825 (Exhibit 19F).[12]   Moreover, as with the ALJ's findings regarding Dr. Downing, the Court finds no error in the ALJ's consideration of Claimant's activities of daily living and subjective complaints, as well as lack of deficits noted in other portions of the record, and the ALJ finding those inconsistent with Dr. Marcelin's

---

[12] Claimant suggests that Dr. Marcelin "opined as early as June 15, 2018" that Claimant "is not able to work at this time."   Doc. No. 26, at 28–29 (citing R. 586, 825).   But Claimant does not expand on this argument.   *See id.*   And notably, an opinion that Claimant is unable to work is not entitled to any deference by the ALJ.   *See* 20 C.F.R. § 404.152b(c).   *See also Cianfrani v. Comm'r of Soc. Sec.*, No. 2:20-cv-24-FtM-MRM, 2021 WL 973494, at *4 (M.D. Fla. Mar. 16, 2021) (citations omitted) ("[T]he Court agrees with the Commissioner that Dr. Lovett's finding on Plaintiff's ability to work on a part-time or full-time basis is not a 'medical opinion' within the meaning of the regulations.   In fact, 20 C.F.R. § 404.1520b(c) states that the ALJ is not required to provide any analysis about how he considered statements on a claimant's ability to work because such statements constitute evidence that is neither valuable nor persuasive.   Thus, the ALJ was not required to place any value in Dr. Lovett's assertion that Plaintiff could not return to work.").

opinions, for the same reasons discussed above with regard to the ALJ's consideration of the opinion of Dr. Downing.   *See supra* pp. 13–17.

Based on the foregoing, Claimant's sole assignment of error is unpersuasive.

## V.   CONCLUSION.

Based on the foregoing, it is **ORDERED** that:

1.    The final decision of the Commissioner is **AFFIRMED**.

2.    The Clerk of Court is **DIRECTED** to enter judgment in favor of the Commissioner, and thereafter, to **CLOSE** the case.

**DONE** and **ORDERED** in Orlando, Florida on March 21, 2022.

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record